Albert ICHELSON III, Kelly P. Ichelson, and Albert Ichelson III, As Parent and Next Friend of Albert Ichelson IV, Brandon T. Ichelson, Christopher J. Ichelson, Danielle M. Ichelson, and Ross A. Grogan, Appellants,

v.

WOLFE CLINIC, P.C., An Iowa Professional Corporation, and Steven C. Johnson, Appellees.

No. 96–301.

Supreme Court of Iowa.

March 25, 1998.

**309**

Glenn L. Norris, George F. Davison, Jr., and Carla T. Schemmel of Hawkins & Norris, Des Moines, for appellants.

James W. O'Brien and Robert C. Rouwenhorst of Dickinson, Mackaman, Tyler & Hagen, P.C., Des Moines, for appellees.

LARSON, Justice.

Albert Ichelson III (and his family alleging loss of consortium) sued Wolfe Clinic, P.C. and Dr. Steven C. Johnson, one of its staff doctors. The suit was based on alleged medical malpractice in the clinic's surgery on Ichelson's eyes. A jury found against the plaintiffs, who appealed. They complain of error by the district court in (1) admitting evidence of medical care, after the Wolfe Clinic surgery, furnished by an eye clinic at Johns Hopkins University, and (2) refusing to allow the plaintiffs to inquire into Wolfe Clinic's advertising materials and financial information. We affirm.

## I. *The Facts.*

Ichelson suffered from a congenital eye defect known as bilateral lens dislocation. In a normal eye, the lens is located immediately behind (posterior to) the pupil. The lens is contained in a clear membrane called a capsule, which is held in place behind the pupil by small ligaments called zonules. The zonules in Ichelson's eyes did not hold the lens capsules in their proper position, causing them to be "dislocated," or suspended by only a portion of the zonules. The result is that the lens capsules are located too far back in the eye chamber to provide adequate vision.

Normally, as the eye ages, its lens material loses elasticity and becomes cloudy. Eventually, the lens becomes opaque and hard in a condition known as a cataract. This hap-pened to Ichelson. He went to the Wolfe Clinic to see what treatment options were available to him. The normal procedure in treating cataracts is to implant new lenses. When a cataracted lens is located in the normal position, the procedure is relatively uncomplicated. The surgeon makes a small opening in the cornea and cuts open the lens capsule, removes the cataracted lens, and replaces it with a plastic lens. This form of cataract surgery, which is the most common, is called a posterior lens implant because the new lens is placed in the lens capsule in the posterior chamber of the eye. Dr. Johnson, at the Wolfe Clinic, thought that this type of surgery should not be done on Ichelson, however, because his natural lenses were out of place. Dr. Johnson recommended a different type of cataract surgery.

In this procedure, called an anterior intraocular lens implant, the surgeon cuts through the cornea and places the lens anterior to, or in front of, the pupil and iris. This lens has two extensions, which are designed to have four flexible contact points in the margin of the anterior chamber where the iris tissue meets the cornea. The lens itself is designed so that it does not actually touch the iris or cornea. The anterior lens procedure is relatively rare and, according to some of the medical evidence, is more likely to cause complications than the posterior implant procedure.

Dr. Johnson performed an anterior intraocular lens implant on Ichelson's right eye in September 1993 and on his left eye in October. Soon after these surgeries, Ichelson began to have problems in both eyes, including slippage of the artificial lenses, a condition characterized by the doctors as "jiggly lenses." (The defendants apparently concede that the implanted lenses were too small for Ichelson's eyes.)

In January 1994 Ichelson, unhappy with the result at the Wolfe Clinic, went to the Johns Hopkins retinal clinic. There, a retinal specialist, Dr. Julia Haller, performed surgery on his eyes in a four-stage procedure. First, she removed the jiggly lenses implanted at the Wolfe Clinic. Then she removed Ichelson's natural cataracted lenses (which had not been removed during the

Wolfe Clinic surgeries). Third, the doctor did a vitrectomy, removing the vitreous gel from Ichelson's eyes to facilitate the implantation. In the fourth step, she implanted posterior chamber lenses.

## II. *The Issues.*

■ A. *The intervening medical treatment at Johns Hopkins.* The plaintiffs attempted to exclude any evidence of the treatment by Johns Hopkins on the basis that it was irrelevant as a matter of law. Their theory is that, if Ichelson's treatment at the Wolfe Clinic required corrective treatment at Johns Hopkins, Wolfe Clinic must bear the risk of that treatment, including any additional eye damage resulting from it. Because, they contend, Wolfe Clinic is liable for any damages to Ichelson's eyes, whether caused by Wolfe Clinic or Johns Hopkins, any evidence as to what part of the damage was caused by Johns Hopkins is irrelevant. (The plaintiffs have not joined Johns Hopkins or its doctors as defendants in this action nor, apparently, have they filed any independent claims against them.)

The plaintiffs attempted to exclude this evidence by an application for adjudication of law points, a motion for partial summary judgment, and three motions in limine. These motions were all denied by the district court, and the plaintiffs assert this was error.

The defendants respond in three ways: (1) the plaintiffs failed to preserve error on the court's rulings, (2) the plaintiffs waived any error by "opening the door" on evidence of the Johns Hopkins treatment, and (3) in any event there is no legal merit to the plaintiffs' theory that the Johns Hopkins treatment is irrelevant. Because we agree with the defendants' last argument, we pass the issues of error preservation and waiver.

The plaintiffs' legal argument is based primarily on *Casey v. Koos,* 323 N.W.2d 193 (Iowa 1982), and similar cases embodying the concept of Restatement (Second) of Torts section 457, at 496 (1965) (defendant liable for additional harm resulting "from normal efforts of third persons in rendering aid"). In *Casey* the plaintiff had been injured in a collision between snowmobiles, and she sued the operator of the other snowmobile. The defendant attempted to introduce evidence that a treating doctor's negligence contributed to the plaintiff's injuries. We rejected this argument, stating:

> Assuming there was no negligence in selecting the doctor, which is not claimed here, the general rule is that a tort-feasor is responsible for the negligence of an attending physician in treating the injured party.

*Casey,* 323 N.W.2d at 197.

The Restatement embodies this principle as well:

> If the negligent actor is liable for another's bodily injury, he is also subject to liability for any additional bodily harm resulting from normal efforts of third persons in rendering aid which the other's injury reasonably requires, irrespective of whether such acts are done in a proper or a negligent manner.

Restatement § 457.

The principle of *Casey* and Restatement section 457 is that injuries resulting from treatment necessitated by the defendant's original acts of negligence may be disregarded in assessing liability. In the present case, it is clear the last three steps in the Johns Hopkins treatment were not necessitated by the original surgery at the Wolfe Clinic. The last three steps were intended to improve Ichelson's vision.

There was evidence in the record from which the jury could find that the procedures at Johns Hopkins that went beyond removal of the jiggly lenses contributed to Ichelson's problems. For example, one of the problems complained of at trial was that Ichelson suffered from cystoid macular edema (CME), and one of the causes of that condition is inflammation caused by surgical intervention in the eyes. The Johns Hopkins surgery to correct Ichelson's vision, as opposed to the procedure to correct any Wolfe Clinic mistakes, might have caused the CME.

While the last three steps in the Johns Hopkins procedure apparently would not have been as likely as the original anterior implantation at Wolfe Clinic to cause CME or other problems, there was evidence that

they in fact could have caused that problem. (In fact, when Ichelson was first examined at Johns Hopkins, after the Wolfe Clinic surgeries, no CME was apparent.) It was proper for the court to allow evidence to be introduced by the defendants regarding all of the Johns Hopkins procedures in order to allow the jury to sort out what effect, if any, those procedures had on Ichelson's condition.

■ Moreover, the plaintiffs cannot complain that they were prejudiced by the jury's consideration of the intervening acts by Johns Hopkins because the jury found no negligence on the part of Wolfe Clinic or its doctor. Restatement section 457 attributes the acts of third parties to the original actor only if the intervention was caused by the negligence of the original actor. Section 457 itself makes that clear, stating that, "[i]f the negligent actor is liable for another's bodily injury," he is also liable for any additional harm resulting from normal efforts by third parties. This rule presupposes that the intervening acts are necessitated by a wrongful act of the original tortfeasor.

In *Hunt v. Ernzen,* 252 N.W.2d 445 (Iowa 1977), a passenger was injured by the negligence of the driver and was hospitalized as a result. A nurse negligently injected a drug, causing a permanent foot drop. We held that the driver was liable for this injury as well as for the original injury, stating:

> "The *wrongdoer* is charged with notice of [the] fact [that medical treatment is a necessary adjunct to the victim's recovery] and under the rules of law is rendered chargeable for the value of such surgical services and for all its hazards. If the surgeon prove neglectful or unskillful, his acts are deemed an aggravation of the injury, and their evil consequences, if any, are chargeable to the wrongdoer to the same extent as though he had perpetrated the negligence."

*Hunt,* 252 N.W.2d at 447 (quoting *Paine v. Wyatt,* 217 Iowa 1147, 1149, 251 N.W. 78, 79 (1934)) (emphasis added).

Even the plaintiffs' requested instruction recognized that the original surgery must have been negligently performed before the rule of Restatement section 457 applies. Their requested instruction stated:

> You are instructed that *if you find the defendants negligent,* then it is not a defense for them nor can they avoid liability for aggravation of the injuries caused by medical personnel who later negligently treated the plaintiff for the injuries he received as a result of the original negligence of the defendants.

(Emphasis added.)

The jury, in answering the first interrogatory on the verdict form, stated that it found no negligence by the defendants. Under the court's instructions, they correctly stopped at that point and did not proceed to the issue of proximate cause. Plaintiffs therefore could not have been prejudiced by evidence of the Johns Hopkins treatment.

■ B. *The discovery issues.* The plaintiffs complain that the trial court abused its discretion in failing to compel the production of the defendants' advertising and financial information. The plaintiffs moved to compel the discovery, and the defendants filed a resistance and a motion for a protective order. The court did not rule on the plaintiffs' motion to compel, and the plaintiffs did not request a ruling by filing a motion under Iowa Rule of Civil Procedure 179(b). Under these circumstances, the issues raised in the motion to compel would ordinarily not be preserved for review. *See Claus v. Whyle,* 526 N.W.2d 519, 527 (Iowa 1994). The plaintiffs rely on the court's pretrial ruling on two motions in limine filed by the defendants. In these rulings, the court sustained the defendants' objection to one item of advertising that the plaintiffs sought to introduce as evidence, and granted the defendants' request to exclude discussion of the defendants' financial earnings. These rulings, on the defendants' motions, were insufficient to preserve any error based on the court's failure to compel discovery sought by the plaintiffs.

Because we find no error in the trial court proceedings, we affirm.

**AFFIRMED.**

CARTER and SNELL, JJ., take no part.